UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

KATE HAGGERTY,                                          **Docket No.:**

                                        *Plaintiff,*

                                                       **COMPLAINT**
         -against-
                                                       **PLAINTIFF DEMANDS**
INTEGRATED MEDICAL PROFESSIONALS, PLLC,                 **A TRIAL BY JURY**
DEEPAK KAPOOR, M.D., & PHILLIP CHADEE,

                                        *Defendants.*
------------------------------------------------------------------X

        Plaintiff Kate Haggerty, as and for her Complaint, all upon information and belief,

respectfully alleges as follows:

### JURISDICTION AND VENUE

        1.      This Court has original jurisdiction over the subject matter of this litigation

pursuant to 28 U.S.C §1331, in that certain of the Plaintiff's claim arise under the laws of the

United States, namely Title VII of the Civil Rights Act of 1964 §2000(e) ("Title VII"), and

supplemental jurisdiction exists over the remainder of Plaintiff's claims under Chapter 18, Article

15 of the New York State Executive Law §296(1)(a), §296(6) and §296(7).

        2.      Venue is proper under 42 U.S.C §2000e-5(f)(3) and 28 U.S.C §1391(b) because

Defendants do business in the Southern District of New York.

        3.      Plaintiff filed a charge of unlawful discrimination and retaliation against Defendant

Integrated Medical Professionals, PLLC, with the Equal Employment Opportunity Commission

on November 23, 2020 and received a Notice of Right to Sue on June 3, 2021.

### IDENTITY OF THE PARTIES

        4.       At all relevant times mentioned herein, Plaintiff Kate Haggerty ("Haggerty") was

employed by Defendant Integrated Medical Professionals, PLLC ("IMP").

5.     At all relevant times mentioned herein, IMP was and is a professional limited liability corporation authorized to do business in the State of New York.

6.     IMP is a multi-specialty physician group operating in the greater New York Metropolitan area, specializing in urology, radiation oncology and pathology and maintains an office in this District.

7.     Defendant Deepak A. Kapoor ("Kapoor"), is the Founder, Chairman & CEO of IMP.

8.     Defendant Philip Chadee ("Chadee") is the Manager of the IMP office where Haggerty worked and at all relevant times was her direct supervisor.

## FACTUAL BACKGROUND

9.     Haggerty began her employment with IMP in 2014 as a Licensed Practical Nurse.

10.    Prior to commencing her employment with IMP, Haggerty had 15 years of specialized experience in urodynamic testing to assess filling and emptying of the bladder, and also had experience in biofeedback therapy, a form of pelvic floor muscle rehabilitation.

11.    Haggerty's schedule at IMP was Monday through Wednesday, in 10-12 hour shifts.

12.    As a full-time employee, Haggerty received a benefit package including health insurance, which was important to her.

13.    In or about 2018, IMP hired Phillip Chadee ("Chadee") as the Office Manager.

14.    Chadee was the most senior person at the location where Haggerty worked and he had complete discretion from senior management to make operational decisions, including hiring and firing decisions.

15.     Chadee was totally responsible for everything relating to the operation of the office, including scheduling, the billing department, and payroll for all employees.

16.     For the entirety of Haggerty's employment after Chadee arrived in 2018, Chadee engaged in vulgar, obscene and disgusting sexual harassment, which included but was not limited to at least the following:

- Telling Haggerty, following her extensive oral surgery in December 2019, that her husband would be happy because her mouth would be stuck open and he could **"stick his dick in there whenever he wanted;"**

- Constantly telling most of the women, to **"Wash your pussy,"** which was disgusting and humiliating;

- Demanding that a young female employee go into the ladies room and **"wash [her] pussy"** and further stating that **he would smell her when she came out**, causing her to burst into tears;

- Telling Haggerty that she was a "BBD," which was an acronym for "Big Black Dick," and explicitly telling Haggerty that she was a **"Big Black Dick woman;"**

- Making sexual hand gestures;

- Saying that a woman who cut her hair short looked like a **"dyke;"**

- Calling Haggerty and her female colleagues **"10 cent whores;"**

- Referring to female employees as "ho" and greeting them by saying **"Hi, ho!"** or **"Hey, you, ho!"**

- Talking about the breast size of the women in the office;

- Telling Haggerty not to "forget to complete the sexual harassment training!" and then pushing his tongue into his

3

cheek repeatedly, to symbolize someone performing oral sex
on a man.

The acts mentioned above are not all inclusive, but instead are only examples of discrimination to which IMP subjected Haggerty because of her gender, the effect of which severely or pervasively altered the terms, conditions and privileges of Haggerty's employment.

17.     The hostile work environment that Chadee created was exacerbated by the degrading racial insults and epithets he would use in the workplace, including regularly calling patients **"Niggers"** and **"Sand Niggers,"** including referring to one patient wearing a hijab as a **"Sand Nigger"** and saying, **"Watch out the terrorists are here"** when she walked in; as well as telling Haggerty that if she was ever was in prison, her nickname would be **"snow flake"** because she is Caucasian.

18.     Haggerty observed Chadee threaten people who spoke up against him and actually terminate some who opposed him, and on one occasion when Haggerty asked Chadee about a coworker who no longer worked at IMP, Chadee stated he "took out the trash."

19.     Haggerty believed that it was only a matter of time before Chadee turned his attention to her because of her protests of his sexual harassment and racist remarks, but Haggerty earned substantial revenue for IMP and was important to its business.

20.     There was no on-site human resource department, rather IMP contracted with an outside entity for human resource services.

21.     Chadee repeatedly boasted that the representative assigned to the facility, Sarah Diele, would tell him everything, including complaints made about him, so that Haggerty

reasonably had no genuine avenue for complaining about Chadee, given that that he had total control over the workplace.

22.     Haggerty also learned over the course of her employment that female employees complained about Chadee, including complaints to Kapoor, the Chairman and CEO.

23.     Kapoor refused to stop Chadee's unlawful conduct or to take any action to ensure that the employees who reported to Chadee were not subjected to unlawful conduct, so that Kapoor aided and/or abetted Chadee's discrimination.

24.     IMP took no action about Chadee's conduct and instead gave Chadee full reign to manage as he desired, so that IMP ratified, permitted and condoned Chadee's unlawful discrimination.

25.     Haggerty, nevertheless regularly protested Chadee's vile conduct, telling him repeatedly that his behavior was appalling, among other things, but Chadee persisted in his discriminatory conduct.

26.     In March 2020, much of New York State and the world shut down due to the COVID-19 global pandemic.

27.     Chadee advised Haggerty that she was being furloughed and that when the office fully reopened, she would be restored to the same position she had at the time of the furlough.

28.     As the weeks turned into months, Haggerty attempted to stay in contact with Chadee to find out when she would be returned to work, but Chadee did not answer her calls, which caused Haggerty distress and anxiety.

29.     On July 8, 2020, at or around 8:00 PM, as Haggerty was putting her son to bed, she received a voicemail message from IMP's office on her cell phone.

30.     When she listened to the voicemail, she was horrified to hear Chadee breathing heavily and making sounds that Haggerty reasonably perceived to be Chadee masturbating.

31.     Haggerty took a day to process the voicemail, which was degrading and disgusting.

32.     However, Haggerty needed her job, especially during the pandemic, and Haggerty was compelled to call Chadee to inquire about her return.

33.     When Chadee answered, Haggerty told him that she received his nasty message and that he had taken his conduct to a whole other level of disgusting, and forcefully made clear that he should never do something like that again.

34.     Chadee responded by laughing at Haggerty, clearly confirming that he knew exactly what Haggerty was referring to and would not be deterred by her.

35.     Haggerty became furious at his blatant disregard of the impact that his conduct had on her and spoke to him in a way that she had not before, saying, "I don't know what you are finding funny about this considering you have two daughters in their 20's and I know you would not appreciate if someone left a message like that for them."

36.     Chadee was clearly taken aback by Haggerty's protest, became angry and told Haggerty that she should "get a grip."

37.     When Haggerty asked Chadee about her return date, he responded by asking her about her son's school schedule, even though Haggerty being a mother had never affected her ability to work.

38.     Haggerty informed Chadee that she would be able to resume her schedule of coming into the office three days per week, as she had done for the past 7 years.

39.    Chadee, however, then angrily told Haggerty that he would need her for *four* days a week, which had never been her schedule, and he offered no reason for her increased presence in the office, especially during a pandemic.

40.    Haggerty responded by telling Chadee that she would see what she could do about childcare and would get back to him shortly.

41.    Desperate for her job, Haggerty got back in touch with Chadee a few days later and told him that since her son would be going to school in person, she could work the additional hours he required.

42.    Chadee, however, then completely changed his position without explanation and told Haggerty that the four day schedule was no longer available and that now she could only come back to work two days per week, without benefits, for the foreseeable future, which would be a substantial decrease in Haggerty's compensation.

43.    It was painfully obvious to Haggerty that Chadee had no intention of bringing Haggerty back because, among other things, she had called him out on his vulgarity, and that Chadee was retaliating against her by creating a schedule that he knew she would find unacceptable so that she would not return.

44.    Haggerty protested Chadee's clear retaliation by telling him that working only two days per week with no benefits was not acceptable to her and that if such a schedule was the only one available to her, he had succeeded in forcing her departure from IMP.

45.    Chadee reconfirmed that the two-day schedule with no benefits was not temporary and would exist for the foreseeable future, which was a material diminution in her compensation.

46.     On August 23, 2020, Haggerty texted Louis Faiella, M.D. ("Faiella"), one of the physicians at IMP, about the change in her schedule and the fact that she could not return.

47.     Faiella responded that he was not sure what changed but would inquire and get back to her.

48.     The next day, August 24, 2020, Haggerty again texted Faiella and reconfirmed that she had been advised by Chadee that the only position that was available to her was two days per week without benefits, but Faiella did not respond.

49.     Soon thereafter, Haggerty learned that IMP had posted a full-time position with her job title on Indeed.com at a higher hourly rate than she was earning pre-pandemic, confirming that Chadee's claim that he only needed her two days per week was not true and was a pretext for discrimination and retaliation.

50.      On September 22, 2020, Haggerty emailed Kapoor, advising him what had occurred with Chadee and the fact that she had been forced out of her employment, and that she believed the loss of her job was due to her protest of Chadee's sexual harassment.

51.     Kapoor did not respond to Haggerty's email.

52.     As a result of IMP's unlawful conduct, Haggerty has suffered the adverse effects of discrimination and retaliation, which includes damages to the quality of her life, her self-esteem, self-respect and financial and emotional well-being because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Haggerty into the future.

8

## AS AND FOR A FIRST CAUSE OF ACTION ON
## BEHALF OF HAGGERTY AGAINST IMP FOR SEX
## DISCRIMINATION IN VIOLATION OF TITLE VII OF
## THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000E-2

53.     Haggerty repeats, realleges and incorporates in full paragraphs 1 through 52 of this Complaint, as though fully set forth at length herein.

54.     Haggerty was subjected to a pattern and practice of continuous, unwelcome, humiliating, and reprehensible sexual harassment that was permitted by IMP, the effect of which severely or pervasively altered the terms, conditions and privileges of Haggerty's employment.

55.     The conduct that IMP took against Haggerty that forms the basis of this cause of action was unwelcome to her, a fact which IMP knew or should have known.

56.     IMP created and allowed a hostile work environment Haggerty reasonably perceived to be hostile and which would be perceived as hostile by any reasonable person, which is properly imputed to IMP.

57.     IMP was obligated to maintain a workplace free of hostility and to prevent its employees from violating any laws designed to prevent unlawful discrimination in employment, yet IMP failed to effectively enforce a program against discrimination and harassment.

58.     As a proximate result of IMP's conduct, Haggerty has been adversely affected in her employment and in her normal life's pursuits, and Haggerty believes that the injuries she incurred by being subjected to IMP's conduct complained of herein has and will continue to have a devastating effect upon her professional career, as well as the quality of her life.

59.     Haggerty was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise intimidated and degraded because of IMP's

outrageous conduct in violation of Haggerty's human rights, all of which impacted her well-being and the quality of her life.

60.     The aforementioned acts of IMP constitute unlawful discrimination on the basis of sex against Haggerty in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 et seq., as amended ("Title VII"), which provides, *inter alia*, that:

> It shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .

61.     As a direct and proximate result of IMP's violation of Title VII, IMP is liable to Haggerty for damages, including punitive damages, as well as reasonable attorney's fees, pre-judgment interest and costs.

62.     Here, the acts of IMP were so egregious and were done with such bad-faith and/or reckless indifference for Haggerty's protected rights under Title VII that, in addition to all the damages inflicted upon Haggerty and in addition to all the measures of relief to which Haggerty may properly be entitled herein, IMP should also be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter IMP and others similarly situated from engaging in such conduct in the future.

63.     Haggerty, therefore, seeks compensatory damages in this First Cause of Action, including, among other things, for loss of earnings and loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as punitive damages, reasonable attorney's fees, the costs of this action and pre-judgment interest, in this cause of action.

**AS AND FOR A SECOND CAUSE OF ACTION ON
BEHALF OF HAGGERTY AGAINST IMP FOR SEX
DISCRIMINATION IN VIOLATION OF CHAPTER 18, ARTICLE
15 OF THE NEW YORK STATE EXECUTIVE LAW §296(1)(a)**

64.     Haggerty repeats, re-alleges and incorporates in full paragraphs 1 through 63 of this Complaint, as though fully set forth at length herein.

65.     Haggerty was subjected to a pattern and practice of continuous, unwelcome, humiliating, and reprehensible sexual harassment that was permitted by IMP, which subjected Haggerty inferior terms, conditions or privileges of employment because of her sex in a manner that a reasonable victim of sex discrimination would consider to be greater than petty slights or trivial inconveniences, pursuant to Executive Law §296(1)(h).

66.     The conduct that IMP took against Haggerty that forms the basis of this cause of action was unwelcome to her, a fact which IMP knew or should have known.

67.     IMP created and allowed a hostile work environment, which Haggerty reasonably perceived to be hostile and which would be perceived as hostile by any reasonable person, which is properly imputed to IMP.

68.     Haggerty was caused to suffer emotional injuries, all of which humiliated and otherwise intimidated and degraded Haggerty because of IMP's outrageous conduct in violation of Haggerty's human rights, and which impacted on her health, well-being and the quality of her life.

69.     The aforementioned acts of IMP constitute unlawful sex discrimination against Haggerty in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) ("New York State Human Rights Law"), which provides, inter alia, that:

11

> It shall be an unlawful discriminatory practice: (a) For an employer
> . . . because of an individual's . . . sex . . . to discriminate against
> such individual in compensation or in terms, conditions or privileges
> of employment.

70.     As a direct and proximate result of IMP's violation of the New York State Human

Rights Law §296(1)(a), Haggerty was adversely affected in her employment, and did and continues

to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result

of IMP's discriminatory conduct did and will continue to have a devastating effect upon the quality

of her life and career, and will prevent her from functioning as she did prior to the conduct

complained of herein, all of which Haggerty alleges to be in the amount of Two Million Dollars

($2,000,000), as well as reasonable attorney's fees pursuant to §297(10), and pre-judgment interest

and costs.

71.     Here, IMP's conduct towards Haggerty shows that it acted with willful or wanton

negligence, or recklessness, or a conscious disregard of Haggerty's rights under the New York

State Human Rights Law, or that its unlawful actions against Haggerty were so reckless as to

amount to a disregard of Haggerty's rights, so that in addition to all the damages inflicted upon

Haggerty and in addition to all the measure of relief to which Haggerty may properly be entitled

herein, IMP should also be required to pay punitive damages pursuant to §297(9) as punishment

for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order

to deter IMP and others similarly situated from such conduct in the future.

72.     Haggerty, therefore, seeks judgment against IMP on this Second Cause of Action,

for, among other things, for compensatory damages in the sum of Two Million Dollars

($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive

damages, together with costs, pre-judgment interest and reasonable attorney's fees pursuant to §297(10), making a total claim of Five Million Dollars ($5,000,000).

**AS AND FOR A THIRD CAUSE OF ACTION ON
BEHALF OF HAGGERTY AGAINST CHADEE FOR SEX
DISCRIMINATION IN VIOLATION OF CHAPTER 18, ARTICLE
<u>15 OF THE NEW YORK STATE EXECUTIVE LAW §296(1)(a)</u>**

73.     Haggerty repeats, re-alleges and incorporates in full paragraphs 1 through 72 of this Complaint, as though fully set forth at length herein.

74.     At all relevant times herein, Chadee was Haggerty's employer under the New York State Human Rights Law and, accordingly, was subject to that Law's prohibition against sex discrimination.

75.     Haggerty was subjected to a pattern and practice of continuous, unwelcome, humiliating, and reprehensible sexual harassment by Chadee, which subjected Haggerty inferior terms, conditions or privileges of employment because of her sex in a manner that a reasonable victim of sex discrimination would consider to be greater than petty slights or trivial inconveniences pursuant to §296(1)(h).

76.     The conduct that Chadee took against Haggerty that forms the basis of this cause of action was unwelcome to her, a fact which Chadee knew or should have known.

77.     Haggerty was caused to suffer emotional injuries, all of which humiliated and otherwise intimidated and degraded Haggerty because of Chadee's outrageous conduct in violation of Haggerty's human rights, and which impacted on her health, well-being and the quality of her life.

78.     The aforementioned acts of Chadee constitute unlawful sex discrimination against Haggerty in violation of the New York State Human Rights Law §296(1)(a), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice: (a) For a person . . . because of an individual's . . . sex . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

79.     As a direct and proximate result of Chadee's violation of the New York State Human Rights Law §296(1)(a), Haggerty was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of IMP's discriminatory conduct did and will continue to have a devastating effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Haggerty alleges to be in the amount of Two Million Dollars ($2,000,000), as well as reasonable attorney's fees pursuant to §297(10), and pre-judgment interest and costs.

80.     Here, Chadee's conduct towards Haggerty shows that he acted with willful or wanton negligence, or recklessness, or a conscious disregard of Haggerty's rights under the New York State Human Rights Law, or that its unlawful actions against Haggerty were so reckless as to amount to a disregard of Haggerty's rights, so that in addition to all the damages inflicted upon Haggerty and in addition to all the measure of relief to which Haggerty may properly be entitled herein, IMP should also be required to pay punitive damages pursuant to §297(9) as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter IMP and others similarly situated from such conduct in the future.

81.     Haggerty, therefore, seeks judgment against Chadee on this Third Cause of Action, for, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees pursuant to §297(10), making a total claim of Five Million Dollars ($5,000,000).

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF HAGGERTY AGAINST IMP FOR RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000E-3

82.     Haggerty repeats, realleges and incorporates in full paragraphs 1 through 81 of this Amended Complaint, as though fully set forth at length herein.

83.     Each time that Haggerty protested IMP's discriminatory conduct, she was engaged in a protected activity under Title VII, of which IMP was aware.

84.     As a proximate result of Haggerty engaging in a protected activity, Haggerty suffered material adverse employment action, which included, among other things, having her hours reduced and ultimately being forced out of IMP, all of which was causally connected to her complaint of sexual harassment.

85.     IMP's unlawful conduct had a devastating impact on Haggerty's employment, her emotional well-being, the quality of her life and her life's normal pursuits, which injuries Haggerty believes will continue to cause her significant damage.

86.     IMP's aforementioned acts constitute unlawful discriminatory retaliation against Haggerty in violation of Title VII, 42 U.S.C. §2000e-3(a), which provides, *inter alia*, that:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has

15

> opposed any practice made unlawful employment practice by the subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

87.     As a direct and proximate result of IMP's violation of Title VII, IMP is liable to Haggerty for damages, including punitive damages, as well as reasonable attorney's fees, pre-judgment interest and costs.

88.     Here, the acts of IMP were so egregious and were done with such bad-faith and/or reckless indifference in the face of a perceived risk that its actions would violate Haggerty's protected rights under the law that, in addition to all the damages inflicted upon Haggerty and in addition to all the measures of relief to which Haggerty may properly be entitled herein, IMP should also be required to pay punitive damages in an award to be determined at a trial of this matter as punishment for its discriminatory conduct, in order to deter IMP and others similarly situated from engaging in such conduct in the future.

89.     As a direct and proximate result of IMP conduct complained of herein, Haggerty has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and emotional pain and suffering, so that Haggerty seeks in this Fourth Cause of Action compensatory damages in an amount to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

90.     Haggerty, therefore, seeks compensatory damages in this Fourth Cause of Action, including among other things, for the financial and emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as punitive damages, reasonable attorney's fees, the costs of this action and pre-judgment interest, in this cause of action.

16

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF**
**OF HAGGERTY AGAINST IMP FOR RETALIATION**
**IN VIOLATION OF CHAPTER 18, ARTICLE 15 OF**
**THE NEW YORK STATE EXECUTIVE LAW §296(7)**

91.    Haggerty repeats, realleges and incorporates in full paragraphs 1 through 90 of this Complaint, as though fully set forth at length herein.

92.    Each time that Haggerty protested IMP's discriminatory conduct, she was engaged in a protected activity under the New York State Human Rights Law, of which IMP was aware.

93.    As a proximate result of Haggerty engaging in a protected activity, Haggerty suffered adverse employment action, which included, among other things, having her hours reduced and ultimately being forced out of IMP, all of which was causally connected to her complaint of sexual harassment.

94.    IMP's unlawful conduct had a devastating impact on Haggerty's employment, her emotional well-being, the quality of her life and her life's normal pursuits, which injuries Haggerty believes will continue to cause her significant damage.

95.    The aforementioned acts of IMP constitute unlawful discriminatory retaliation against Haggerty in violation of the New York Human Rights Law §296(7), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

96.    As a direct and proximate result of IMP's violation of the New York State Human Rights Law §296(7), Haggerty was adversely affected in her employment, and did and continues

to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of IMP's retaliatory conduct did and will continue to have a devastating effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Haggerty alleges to be in the amount of Two Million Dollars ($2,000,000), as well as reasonable attorney's fees pursuant to §297(10), and pre-judgment interest and costs.

97.    Here, IMP's conduct towards Haggerty shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Haggerty's rights under the New York State Human Rights Law, or that its unlawful actions against Haggerty were so reckless as to amount to a disregard of Haggerty's rights, so that in addition to all the damages inflicted upon Haggerty and in addition to all the measure of relief to which Haggerty may properly be entitled herein, IMP should also be required to pay punitive damages pursuant to §297(9) as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter IMP and others similarly situated from such conduct in the future.

98.    Haggerty, therefore, seeks judgment against IMP on this Fifth Cause of Action, for, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees pursuant to §297(10), making a total claim of Five Million Dollars ($5,000,000).

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF
OF HAGGERTY AGAINST CHADEE FOR RETALIATION
IN VIOLATION OF CHAPTER 18, ARTICLE 15 OF
THE NEW YORK STATE EXECUTIVE LAW §296(7)**

99.     Haggerty repeats, realleges and incorporates in full paragraphs 1 through 98 of this Complaint, as though fully set forth at length herein.

100.    Each time that Haggerty protested Chadee's discriminatory conduct, she was engaged in a protected activity under the New York State Human Rights Law, of which Chadee was aware.

101.    As a proximate result of Haggerty engaging in a protected activity, Haggerty suffered adverse employment action, which included, among other things, having her hours reduced and ultimately being forced out of IMP, all of which was causally connected to her complaint of sexual harassment.

102.    Chadee's unlawful conduct had a devastating impact on Haggerty's employment, her emotional well-being, the quality of her life and her life's normal pursuits, which injuries Haggerty believes will continue to cause her significant damage.

103.    The aforementioned acts of Chadee constitute unlawful discriminatory retaliation against Haggerty in violation of the New York Human Rights Law §296(7), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

19

104.    As a direct and proximate result of Chadee's violation of the New York State Human Rights Law §296(7), Haggerty was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of Chadee's retaliatory conduct did and will continue to have a devastating effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Haggerty alleges to be in the amount of Two Million Dollars ($2,000,000), as well as reasonable attorney's fees pursuant to §297(10), and pre-judgment interest and costs.

105.    Here, Chadee's conduct towards Haggerty shows that he acted with willful or wanton negligence, or recklessness, or a conscious disregard of Haggerty's rights under the New York State Human Rights Law, or that hiss unlawful actions against Haggerty were so reckless as to amount to a disregard of Haggerty's rights, so that in addition to all the damages inflicted upon Haggerty and in addition to all the measure of relief to which Haggerty may properly be entitled herein, Chadee should also be required to pay punitive damages pursuant to §297(9) as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Chadee and others similarly situated from such conduct in the future.

106.    Haggerty, therefore, seeks judgment against Chadee on this Sixth Cause of Action, for, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees pursuant to §297(10), making a total claim of Five Million Dollars ($5,000,000).

**AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF HAGGERTY AGAINST KAPOOR FOR AIDING & ABETTING SEX DISCRIMINATION IN VIOLATION OF EXECUTIVE LAW §296(6)**

107.    Haggerty repeats, re-alleges and incorporates in full paragraphs 1 through 106 of this Complaint, as though fully set forth at length herein.

108.    As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Kapoor aided and abetted Chadee's discrimination against Haggerty by refusing to take action in response to complaints about Chadee and creating an environment where Chadee was free to sexually harass female employees like Haggerty without repercussion, so that Kapoor should be held personally liable.

109.    The aforementioned acts of Kapoor constitute unlawful aiding and abetting against Haggerty in violation of §296(6) of the New York State Human Rights Law, which states, *inter alia:*

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

110.    Kapoor aided and abetted IMP to engage in the conduct complained of and, as a direct result, Haggerty has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects of IMP's conduct upon Haggerty's employment, career and life's normal pursuits.

111.    As a direct and proximate result of Kapoor's violation of the New York State Human Rights Law §296(6), Haggerty was adversely affected in her education and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of Kapoor's unlawful conduct did and will continue to have a devastating effect upon the quality

21

of her life and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Haggerty alleges to be in the amount of Two Million Dollars ($2,000,000)

112.    Here, Kapoor's conduct towards Haggerty shows that he acted with willful or wanton negligence, or recklessness, or a conscious disregard of Haggerty's rights under the New York State Human Rights Law, or that Kapoor's unlawful actions against Haggerty were so reckless as to amount to a disregard of Haggerty's rights, so that in addition to all the damages inflicted upon Haggerty and in addition to all the measure of relief to which Haggerty may properly be entitled herein, Kapoor should also be required to pay punitive damages pursuant to §297(9) as punishment for his reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Kapoor and others similarly situated from such conduct in the future.

113.    Haggerty, therefore, seeks judgment against Kapoor on this Seventh Cause of Action, for, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees pursuant to §297(9) on this Cause of Action, making a total claim of Five Million Dollars ($5,000,000).

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff Kate Haggerty demands judgment on the First Cause of Action against Defendant IMP in an amount to be determined by the fact-finder; on the Second Cause of Action against Defendant IMP in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); on the Third Cause of Action against

Defendant Philip Chadee in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); on the Fourth Cause of Action against Defendant IMP in an amount to be determined by the fact-finder; on the Fifth Cause against Defendant IMP in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages; on the Sixth Cause of Action against Defendant Philip Chadee in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000), on the Seventh Cause of Action against Defendant Deepak Kapoor in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); plus, for all causes of action, costs, pre-judgment interest and attorney's fees, and for such other relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____
      DAVIDA S. PERRY
      BRIAN HELLER
      3 Park Avenue, Suite 2700
      New York, NY 10016
      (212) 889-6565
      dperry@sphlegal.com
      bheller@sphlegal.com